Our next case for argument is 14-5150, Harman v. United States. Mr. Elderstick? Chick? Mr. Elder? Adelph? He's going to help me with this. What's your name? Adelchick. Adelchick. Please proceed when you're ready. Thank you, Your Honor. May it please the Court. The Court should vacate the judgment because the trial court did not possess jurisdiction to entertain this bid protest regarding cooperative agreements. There is an important place for cooperative agreements in federal contracting, and the FGCAA, which has been on the books since the 1970s, establishes when agencies should use cooperative agreements versus grants versus procurements. And even in CMS, a case where the government ultimately lost, even CMS recognized that cooperative agreements are not subject to procurement law and procedure. So in this case, the trial court erred when it rejected the dichotomy between cooperative agreements and procurements for purposes of the Tucker Act. Now, the Tucker Act limits statutory bid protest jurisdiction to procurements, and this provision of the Tucker Act came into being in 1996 when Congress was legislating against the backdrop of the FGCAA. Can we step back for a minute and talk a little about CMS? Certainly. Why is this different? In CMS, they said this is a procurement contract. The government's getting a benefit from it, right? Why is this demonstrably different from that? The government here was getting a benefit, right? They have a statutory obligation to feed these birds or whatever is happening here, and they got the benefit through these cooperative arrangements to make sure that happened, right? The answer to your question, Your Honor, is found in the touchstone of the FGCAA, which is the principal purpose test, which says that if the principal purpose of the relationship between the agency and the contracting party is to acquire goods or services for the direct benefit and use of the agency, that is a procurement. And that's what the court found in CMS. Based on the particular record evidence in that case, there was evidence that the government was essentially outsourcing contracting officer duties to a third party to save the government from having to do that work itself. Okay. In this case, what we have is the most indirect of all benefits that could be said of any cooperative agreement, which is that the government could be doing what the cooperator is doing, and the cooperative agreement furthers the agency's overall mission. That is the case in every single cooperative agreement and cannot be under the FGCAA's principal purpose test the kind of direct benefit, a direct tangible benefit to the agency. Why is the agency entering into these cooperative agreements? Because Congress has recognized that in this era of limited budgets, that the conservation of wildlife resources on wildlife refuges is of sufficient importance that the agency has been specifically granted authority to enter into cooperative agreements for the purpose of stimulating private conservation activity to further the statutory goal. That's the principal purpose. Indeed, the only purpose of these cooperative agreements is to stimulate the private activity to further the federal statutory goal of wildlife conservation. Now, the court below at page JA32-33 specifically said that the administrative record demonstrates service contracted with farmer cooperators not to benefit them financially, but to obtain their services to provide food for migratory birds and wildlife in exchange for farmers' personal use of public-owned land. The court below looked at the administrative record and came to the conclusion that the principal purpose was something other than what you're saying today. Do we review that? Is that a fact finding? How do we review that? Under what standard? Actually, Your Honor, I would submit that that particular finding supports that the principal purpose was to stimulate the private cooperators to engage in the conservation activity to further the federal statutory goal. Okay, I understand your answer, but can you answer my question, which is, are these the fact findings and what's the standard of review? Well, the question of the principal purpose of the relationship is a question of fact that the trial court did not make any specific fact finding about the agency's principal purpose because the trial court refused to recognize the dichotomy between cooperative agreements and procurements for purposes of the Tucker Act. So what the trial court should have done was it should have reviewed, under a rational basis standard of review, the agency's policy judgment about what was the most appropriate instrument to use in light of the agency's principal purpose in entering into the relationship. I want to make sure I understand. You're saying that the question of what is the principal purpose is a question of fact. It is a jurisdictional fact that It's a question of fact that's based on the record below. Yes, indeed, Your Honor. And the only principal purpose that's apparent on this record is to stimulate these private cooperating farmers to engage in conservation activity to further the overall statutory goal of wildlife conservation on refuges. This sort of approach goes back to Teddy Roosevelt, doesn't it? I mean, this government encouragement of private use in order to facilitate a public end. The Coordination Act goes back, I believe, to the 1930s. Yes, Your Honor. I think it does. But prior to that, the establishment of the Department of the Interior, for example, which even predates Roosevelt, and the National Park Service and so on, the logging policy introduced in the first Roosevelt administration, all of that is about public-private cooperation where, for example, logging is done in a fashion such that the land can be used repeatedly in a beneficial fashion. There is undoubtedly, Your Honor, a long history of government encouraging private and public partnerships to conserve wildlife and our nation's natural resources. Renewable resources. That's right. And this case has major consequences for contract administration throughout the federal government because procurements are governed by one body of law, principally SECA and the FAR, and assistance agreements, like cooperative agreements, are governed by a separate body of law, largely found in Title II of the CFR. And this is going to relate, for example, to grazing rights, isn't it? It very well could, Your Honor. And Congress intended for agencies to exercise discretion in making these policy judgments about which path to choose, the procurement path or the cooperative agreement path, and the trial court's decision curtailed that discretion by making virtually any cooperative agreement subject to procurement law and procedure. Can I ask you about that, just following up? Can you just talk a little about the relief, particularly relief granted in this case, the injunction and how that works and what the consequences would be if we were to affirm the judgment below in terms of government-wide, the kinds of contracts that would be affected and what would need to be done? If the court were to affirm the judgment below, then it is essentially open season on cooperative agreements and grants in the Court of Federal Claims. Now, we're not suggesting that those... Well, firstly, with respect to this case, the relief here doesn't abrogate the ongoing agreement now, right? It waits until the agreement expires or what happens here? No, Your Honor. Actually, there was a mandatory injunction ordering the agency to terminate the cooperative agreements, to cease entering into cooperative agreements and to only use procurements going forward. What's the range of that? The cooperative agreement that's challenged here plus every other cooperative agreement entered into under the statutory provision? The... What's the scope of this injunction? The scope of the injunction pertained to the two wildlife refuges at issue, McNary and Umatilla wildlife refuges. Well, is the practice that's been followed by the government with respect to these refuges the same that's followed nationally? Are there other refuges? I mean, what's at stake here in terms of the more global picture? There are cooperative farming agreements on more than 100 wildlife refuges across the United States. They follow the national flyways, do they not? I'm sorry, I'm not... They follow the national flyways of game birds. Yes, the migratory birds, especially Canadian geese, are implicated here. But let's assume, forgetting the havoc this may or may not create because the government has taken one path and now someone might say that that's the wrong path, if it were the get-go, what are the hazards? Why wouldn't the government necessarily be able to achieve the results of this program by going out and doing procurement, doing bids? Procurements, taking the example of this case, are a very poor fit for this particular program because there is substantial involvement in the performance process where the government is involved in decision-making about what plants to crop and when to harvest them and how to tend them. And all those decisions that go into the performance process, those would conceivably be changes under a changes clause under the FAR in a procurement context where the government is going to be liable for changing the terms of performance every time that you need to resort to flexibility in administering this important conservation program. Okay, so let me just see if I understand. You're saying that there's no way that a bid up front could sufficiently... or the task orders that you put out could sufficiently identify all the exigencies that might occur during the life of this process. So you need the flexibility during the life of this process to... Indeed, and there's any host of permutations in the world of government contracting where the government needs flexibility in order to administer federal statutes and achieve federal statutory goals. All right, why don't we hear from the other side. Thank you. Thank you. May it please the court. My name is James Schaefer and I represent the appellee, Jay Hymas. I'd like to start by answering Judge Stoll's question. The standard review is clear error. Whether the Court of Federal Claims' decision that the principal purpose of these agreements was to acquire properties and services reviewed for clear error. The government has said that the court below didn't identify the principal purpose. What is your position in response to that? I believe the court below's discussion of this court's decision, CMS, indicates a finding that the principal purpose was to acquire property and services, specifically farming services, and ultimately crops that the government used for its direct benefit by feeding them to migratory birds. I'm a little unclear on something. Maybe excuse me. Why is this a question that's reviewed for clear error? I mean, to ascertain what the purpose is, you look at the statute, you look at the legislative history. Why isn't construing that purely a question of law? Why are you saying it's a question of fact that was reviewed for clear error? Yes, Your Honor. Whether an agreement is a procurement contract or a cooperative agreement is a question of law. The underlying factual finding as to what the government's purpose was in entering the agreement, I believe, is a factual question to be reviewed. What are we looking to to determine what the government's purpose is? Are we looking at a statute? No, Your Honor. What we're looking at in this instance is a combination of statutes that set up the National Wildlife Refuge System. He ordered the Secretary of Interior, later the Fish and Wildlife Service, to fulfill that mission, one of which was to provide for the conservation of migratory birds. At that step, then you move into the next requirement, which was to enact a comprehensive conservation plan. In this case, the service enacted that plan. The statute requires that it follow that plan. That plan set up a number of alternatives, one of which was Alternative 2, which was adopted by the service. Alternative 2 required that the service follow all the stipulations in the forming compatibility determination in the comprehensive conservation plan. It's a mix of statutes as well as actions taken by the Fish and Wildlife Services that indicate that farming within the refuges is done to fulfill a statutory mandate, a mandate to provide for conservation principally of migratory birds. The service also, for both refuges, enacted cropland management plans, which recognized there was no other means to fulfill the mission other than crop farming. Those plans lay out three possible alternatives for fulfilling the agency's, the service's statutory mandate, one of which was forced account farming, that the service would use its own personnel to conduct the farming. A second alternative was a straight contract farming. Hire a farmer, pay him to grow crops for the use in feeding migratory birds. And the third alternative was what was actually adopted, which is the Cooperative Farming Agreement Program, under which the service contracts with farmers to grow crops on national wildlife refuge land in exchange for a crop sharing. The farmer typically receives 75% of the crop and the service receives 25% of the crop, which it uses to feed birds. It's left in the field. It's left in the field. And that's where the Court of Federal Claims finding is based, is based on what the agency actually did. The Court of Claims relies substantially upon the definition of procurement in 41 U.S.C. 111 and on CMS, which cites 111 approvingly, to hold that CFAs are procurements. But it doesn't consider other definitions in related statutes, such as, for example, the FGCAA. And you offer the same approach in your brief. You don't consider those other definitions. Can you cite any authority for the proposition that Section 111 is the only dispositive source for an inquiry? There's two issues there, Your Honor. The first is, yes, I believe I can cite authority. Okay. And that is this Court's decision in resource conservation, where this Court actually adopted... I'm sorry. Remember, I used the word only. The only dispositive source for our inquiry. Well, I think one panel of this Court has, in fact, adopted a definition, which should be followed by other panels of this Court. I cannot point to any portion of the touchpad that says, you must use this definition. Well, my problem is that there's a well-established canon that we shouldn't render statutory language superfluous. And you have language in the FGCAA that conflicts. So, what do you do about this? Your Honor, I disagree that there's any language in the FGCAA that conflicts. First, the FGCAA doesn't provide a definition of procurement. What it does is provide guidance as to when the government must use a particular legal instrument, a procurement contract. This Court has already addressed what the scope of the Court of Federal Claims jurisdiction under the Administrative Dispute Resolution Act of 1996 was. And what it did so in resource conservation, and this is a quote, the ADR expanded the jurisdiction of the Court of Federal Claims to hear bid protest cases, ultimately giving the Court exclusive jurisdiction to review the full range of procurement protest cases previously subject to review in the Federal District Courts. That raises what was the scope of the Federal District Courts to hear bid protest cases. And this Court has addressed that in a number of cases. The FGCAA defines cooperative agreements, for example, right? I don't believe it defines cooperative agreements, Your Honor. It indicates when one must be used. And I also don't believe there's a conflict between the FGCAA's use of the term procurement contract and the use of procurement in the Tucker Act because they're two distinct terms. There is no, as the government has argued, there is no discord between them. This Court should give consideration to Congress's use of different terms in different statutes. The Federal District Courts had jurisdiction under what was called the Scanwell line of cases. In Scanwell, the United States Court of Appeals to the District of Columbia held that under the Administrative Procedures Act that disappointed bidders had standing to raise bid protest in District Courts, departing somewhat from the Supreme Court's earlier decision in Perkins v. Luke and Steele where the Supreme Court held that disappointed bidders did not have standing because the government procurement laws were an act to protect the government, not the bidders. In 1948, the Congress enacted the Administrative Procedures Act and subsequently in 1970, the Scanwell Court interpreted that to provide standing to disappointed bidders to challenge... Yes, John, I anticipated a question. Yeah, I'm going to back you up. The FGCAA distinguishes procurement contracts from cooperative agreements, 6303 and 6305. Explaining when executive agencies should use cooperative agreements, so it does define them. It sets the circumstances under which one should be used, but I don't see looking at 6303. The executive agency shall use a cooperative agreement when one, the principal purpose of the relationship is to transfer a thing of value to the recipient to carry out a public purpose of support or stimulation authorized by the law of the United States and instead requiring by purchase, lease, or barter property or services for the direct benefit or use of the United States, and two, substantial involvement is expected between the executive agency and the state, local government, or other recipient. Yes, John, I read that as... and it's correlated to 6303 on procurement contracts as setting out when the government must use a particular legal instrument. The FGCAA was enacted in 1978, so it was on the books when the Administrative Dispute Resolution Act was enacted in 1996, yet Congress chose not to define the scope of the Court of Federal Claims of Jurisdiction using the term procurement contract. It used the term procurement, a distinct term. This court has held that in connection with a proposed procurement or procurement is sweeping, and the existing jurisdiction of district courts to hear bid protest cases could not have been constrained by the Federal Grant Cooperative Agreement Act. That wasn't enacted until 1978. Scanlon predates that by eight years. This court has already held that the Court of Federal Claims has jurisdiction, exclusive jurisdiction, to hear the full range of cases previously heard in the district courts. Tell us about CMS. You presumably think that it covers your case. You heard what the government said about it. I do, Your Honor. CMS discusses what the result should be when the government establishes an intermediary relationship where the government has a statutory obligation to perform some function and enlist the aid of third parties in the performance of that function. The Court of Federal Claims held that this case is analogous to CMS because what it recognized was that the service had a statutory obligation to provide for the conservation of wildlife, including the feeding of migratory birds, that the service could have performed that function itself, if contemplated doing so, but for budgetary reasons opted to enlist the aid of third parties, cooperative farmers, to fulfill that mission. So under this court's holding in CMS, that would be a circumstance in which the principal purpose was to acquire property or services for the direct benefit and use of the government. The direct benefit is that the government did not have to use its own personnel at a greater cost to perform that function, and ultimately what's being acquired here is crops, which the government uses by leaving them in the fields to feed migratory birds. Would the outcome change if the third parties, instead of being farmers, were something like Sierra Club, a group that was volunteering to provide services for the purpose of feeding the migratory birds? The key there, Your Honor, is the volunteer aspect of that. Under the National Wildlife Refugee and Volunteer Act, both the 1998 Act and the 2004 Act, the government does have, or the service does have, authority to enter cooperative agreements with private organizations and individuals, but that authority is limited to the volunteer context. So I think the key there, Your Honor, the answer is yes, that would be different because it's a voluntary program. That's not what's evidenced in the record here and not what the Court of Federal Appeals found. So if Sierra Club was not doing it in a voluntary capacity, you would see that as being no different than the situation where the third party is a farmer? If the Sierra Club was engaged in commercial farming for profit in National Wildlife Refuge lands, we would view that as different and requiring a competitive process before the award of that agreement. How many other types of cooperative agreements will this affect? We ask that question of the government. Well, at the outset, I don't agree that these are cooperative agreements. They are procurement contracts. And so I mentioned, unless you, and that's a question of all, in CMS, the government tried to characterize the agreements as cooperative agreements. What the Court added is no, they're actually procurement agreements. Okay, but that's semantics. Let's assume, I think the question built in, that let's assume that what the government now erroneously, in your view, calls cooperative agreements are really procurement agreements. What's the answer to Judge Welch's question? It would affect those instruments called cooperative agreements that have a principal purpose and I think that's a factual question that will need to be answered on a case-by-case basis. All the crop grazing agreements, for example. I believe, and it's not an area I've looked at recently, I believe the grazing is conducted pursuant to special use permits, which can be, depending on the circumstances, another form of contract. But I don't believe that the grazing permits are enacted for the direct use and benefit of the government. I don't believe that the government has allowed its citizens to use federal land for their own purposes. I'm not sure that grazing actually furthers the mission of the Bureau of Land Management. It depends whether it's done properly or not. I'm not aware of any statute that requires the Bureau of Land Management to make land available for grazing for its own benefit. Okay. Thank you. I'd just like to make a couple of very quick points. First, with respect to the statutory mandate argument that was just made, there is no statutory mandate to farm any particular refuge land or to feed any particular birds. The statutory scheme  gives the agency the option of proceeding either directly administering the land this public land or to use cooperative agreements. And in the Fish and Wildlife Act that was discussed earlier, Congress specifically gave extremely broad cooperative agreement authority to the agency for using cooperative agreements in the context of refuge projects. There is no volunteer requirement in connection with that statute. It was part of the Volunteer and Community Partnerships Enhancement Act. If I'm looking at the right statute and it's the 1998, is it 16742? Yes, 742F, little f. All right. Maybe I have the wrong provision. It seems to me it says it's cooperative agreements in accordance with the purposes of the subsection. And then I have a provision of the subsection which says encouraging volunteers. Am I looking at the wrong thing? In addition to this is exactly the kind of community partnership that Congress had in mind was the agency partnering with private farmers to stimulate the private activity to further the federal statutory goal. Also, Judge Wallach, with respect to your question about whether there's any authority that Section 111 is the be-all and end-all of Tucker Act jurisdiction with respect to the meaning of the term procurements, distributed solutions borrowed from Section 111 in Title 41. But it never said that that was the exclusive source of the only place that the Congress had spoken about the concept of procurements. And, in fact, prior to the passage of that provision, you had the FGCAA which made the clear distinction between cooperative agreements and procurements. Also, the argument was made, well, the Tucker Act says in connection with a procurement, but the FGCAA speaks to procurement contracts. Well, what else would you be talking about in the context of Tucker Act jurisdiction protesting an award in connection with a procurement if not a procurement contract? So that is a distinction without a difference. Finally, with respect to the principal purpose, I would just like to impress upon the Court that this is something that Congress intended to be a basic policy-level decision for the agency to exercise its discretion. And that question, that fact question, should have been reviewed on a rational basis standard by the trial court. The trial court did not do that in this case and supplanted its judgment for the policy judgment of the agency. Because the trial court did not possess jurisdiction to review cooperative agreements, the Court should vacate the judgment including the permanent injunction and remand for dismissal. Thank you. Thank you. We thank both parties and the case is submitted.